**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>ValWest Technologies, Inc.,<br><br>　　　　Defendant. | No. CV-05-3031-PHX-DGC<br><br><br>**ORDER** |

Defendant ValWest Technologies, Inc. has filed a motion for summary judgment. Dkt. #36. ValWest contends that Robert Rickman, a former ValWest employee, was not subjected to a hostile work environment or retaliation. For the reasons set forth below, the Court will grant in part and deny in part Defendant's motion.[1]

**I.    Background.**

The following facts are presented in the light most favorable to the non-moving party. Lorenzo Valenzuela is a founder and owner of ValWest, a small business involved with other companies in the "design, engineer[ing], manufactur[ing], and refurbish[ing] of military and commercial electronic, mechanical and electromechanical assemblies." Dkt. #37 ¶5. On or about June 10, 2003, Mr. Rickman joined ValWest's Computer Aided Design ("CAD") department. *Id.* at ¶10. Mr. Rickman is a practicing Pagan. *See* Dkt. #39 at ¶2.

---

[1] The parties' requests for oral argument are denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir.1999).

**A.     ValWest's Bible Display and Rickman's Response.**

In "late Autumn or early Winter" of 2003, ValWest started displaying a Bible in its lobby. Dkt. #37-2 ¶52; Dkt. #39 at ¶19. Mr. Rickman asserts that the Bible was placed with "4-10 other books" and "given a place of prominence, on a pedestal-like stand, and always open." Dkt. #39 at ¶19. As a result of the Bible display, Mr. Rickman "felt strongly that it was necessary to openly proclaim his Paganism" and therefore began to wear a Pentacle – a Pagan symbol – outside of his shirt. *Id.* at ¶22; *see also id.* at ¶9, 21.

In January of 2004, Mr. Rickman informed Gina Gerdes, the head of ValWest's Human Resources ("HR") Department, that the Bible display made him "uncomfortable," that he felt as though he was under a "Christian umbrella," that he "had to do something to differentiate himself and demonstrate that he was Pagan," and that consequently he would be wearing the Pentacle outside of his shirt. Dkt. #39, Ex. A ¶19. Mr. Rickman did not lodge similar complaints with Mr. Valenzuela because he was wary of Mr. Valenzuela's possible reaction and he thought talking to HR was sufficient. *Id.* at ¶¶25, 50.

**B.     ValWest's Subsequent Actions.**

Mr. Rickman suggests that he was treated well at ValWest before he approached HR about the Bible display, but that things changed for the worse once he complained. In January of 2004, Mr. Valenzuela ordered Mr. Rickman to clean coffee stains throughout the office building, even though the stains were limited to a few spots and another employee informed Mr. Valenzuela that he was the one responsible for the coffee spills. *Id.* at ¶27. In February of 2004, Mr. Valenzuela chastised Mr. Rickman for turning his back on Mr. Valenzuela during an office meeting. *Id.* at ¶32. In April of 2004, Mr. Rickman's desk was moved four times in a three-week period. *Id.* at ¶33. According to Mr. Rickman, each move was to a location that was "further away from that occupied by Mr. Valenzuela, smaller, and less desirable." *Id.* According to Mr. Rickman, no other employees had their offices moved during this timeframe. *Id.*

After Mr. Rickman returned from taking leave for a Pagan holiday, he was placed in the "dog house" – "a free standing structure on the warehouse floor, totally separate from the

1  main office area, which housed everyone else's work space, including that of . . .
2  Valenzuela." – even though there was other, more desirable office space available in the
3  building. *Id*. at ¶¶37, 39.

4        Following the move to the "dog house," Mr. Rickman discovered that religious
5  artifacts were missing from his desk. *Id*. at ¶38. He informed HR about the missing items,
6  but not Mr. Valenzuela. *Id*. Also around April of 2004, Mr. Rickman claims that Mr.
7  Valenzuela "would continually change [his project] priorities without telling me and, at the
8  same time, express his displeasure if I continued to adhere to the original priorities." *Id*. at
9  ¶41. Towards the beginning of May, Mr. Valenzuela told Mr. Rickman, without explanation,
10 that none of the team leaders liked Mr. Rickman. *Id*. at ¶44.

11       **C.**    **Rickman's EEOC Charges.**

12       On May 6, 2004, Mr. Rickman filed a charge of discrimination with the EEOC
13 alleging that he was subject to harassment because of his Pagan religion. Dkt. #37-2 at 31.
14 On May 14, 2004, Mr. Rickman was suffering from a migraine headache and informed
15 ValWest that he would not be coming to work and that he would arrive later in the day if he
16 felt better. Dkt. #39, Ex. A ¶40. Mr. Rickman did not make a subsequent call to report that
17 he would not be coming in at all. *See id*.

18       Defendant claims that, on or around January of 2004, ValWest became concerned
19 with Mr. Rickman's work. Dkt. #37 ¶17. In particular, Defendant states that Mr. Rickman,
20 ValWest's only CAD draftsman, "was not completing CAD projects by their assigned due
21 date and did not appear to be prioritizing projects properly." *Id*. at ¶¶15, 18. Defendant
22 suggests that because Mr. Rickman served as ValWest's only CAD draftsman, it was
23 important for Mr. Rickman to finish tasks in a timely and efficient fashion. *Id*. at ¶¶13, 15.
24 Mr. Rickman states, however, that he only received negative comments regarding his
25 performance on May 17, 2004, after he filed the EEOC charge of discrimination. Dkt. #39,
26 Ex. A ¶48.

27       On the same day, the door to Mr. Rickman's office was locked, though it had never
28 been locked before, and he was denied a key. *Id*. at ¶53. While the door was ostensibly

1 locked in light of "recent break-ins," Mr. Rickman was not aware of any other offices that 2 were locked during this time or co-workers who were denied keys to their offices. *Id*. Mr. 3 Valenzuela let Mr. Rickman into his office and remarked that "the charges you filed against 4 me are serious," the allegations are "only going to cause you trouble," and "who's going to 5 believe you over me anyway?" *Id*. at ¶¶56, 58. Mr. Valenzuela "added that he believed [the] 6 charge was an attack on him because he was a minority." *Id*. at ¶58. Following an exchange 7 about their working relationship, Mr. Valenzuela directed Mr. Rickman to go home for the 8 day because, in Mr. Valenzuela's estimation, Mr. Rickman was too upset to work. *Id*. at ¶63. 9 Mr. Valenzuela said that Mr. Rickman needed a doctor's release in order to return. *Id*.

10 On May 18, 2004, Mr. Rickman contacted his primary care physician's office and was 11 informed that he could not see the physician until May 24, 2004. *Id*. at ¶66. Mr. Rickman 12 informed ValWest of this on the same day. *Id*. He also called ValWest on May 18, 19, 20, 13 and 21, noting that he had not yet seen a physician. *Id*. Mr. Rickman was terminated 14 effective May 21, 2004, for failing to call in or report to work for three consecutive days, and 15 for failing to produce the doctor's release. *See* Dkt. #37-2 at 21, 24. Thereafter, Mr. 16 Rickman filed a second charge of discrimination with the EEOC, claiming retaliation for 17 filing the initial May 6, 2004, charge. *Id*. at 33. On September 29, 2005, the EEOC filed a 18 complaint alleging that Defendant's conduct constituted a hostile work environment and 19 retaliation under Title VII of the Civil Rights Act of 1964. Dkt. #1.

20 **II.    Motion for Summary Judgment.**

21    **A.    Legal Standard.**

22 Summary judgment is appropriate if the evidence, viewed in the light most favorable 23 to the nonmoving party, shows "that there is no genuine issue as to any material fact and that 24 the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Only disputes 25 over facts that might affect the outcome of the suit will preclude the entry of summary 26 judgment, and the disputed evidence must be "such that a reasonable jury could return a 27 verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 28 (1986). Summary judgment may be entered against a party who "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.     Hostile Work Environment.

Plaintiff alleges that Defendant's actions created a hostile work environment. *See* Dkt. #1. To establish such a claim under Title VII, a plaintiff must prove that he was subjected to verbal or physical conduct, that the conduct was unwelcome, and that the conduct was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive work environment. *See Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991). The parties focus on the third element of this standard. To determine whether conduct was sufficiently severe or pervasive, courts look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (internal quotes and citation omitted). The Court finds that the conduct complained of is not severe or pervasive enough to support a hostile work environment claim.

It is undisputed that Mr. Valenzuela "had infrequent contact with Mr. Rickman [from] January to May 2004 . . . as a result of [his] Army Reserve commitments and busy travel schedule away from Arizona." Dkt. #37 ¶21. The EEOC concedes that Mr. Rickman "saw Mr. Valenzuela no more than five or six times from January through the middle of May, 2004[.]" Dkt. #38 at 3. The fact that Mr. Rickman saw Mr. Valenzuela, the only individual alleged to have harassed Mr. Rickman, only five or six times during a five month period cuts against Mr. Rickman's claim that Mr. Valenzuela's conduct was pervasive. Moreover, as Mr. Rickman's interaction with Mr. Valenzuela was limited, the severity of the conduct must be that much greater in order to sustain a hostile work environment cause of action. *See Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the

1 conduct.") (quotations omitted).

2 The parties do not dispute that when Mr. Rickman was hired, Mr. Valenzuela had no knowledge of Mr. Rickman's religious orientation. Dkt. #39 ¶11. The EEOC asserts, however, that Mr. Valenzuela demonstrated his awareness of Mr. Rickman's Pagan beliefs when he said, in April of 2004, "The Emperor is Dead. Long live the King!" *Id.* at 55. The EEOC contends that this statement refers to Paganism, but the agency has provided no evidence whatsoever that it may be objectively understood to serve as a reference to Pagans. *See Montero v. AGCO Corp.*, 192 F.3d 856, 860 (9th Cir. 1999) ("To be actionable under Title VII, '[the] environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive[.]'") (quoting *Faragher*, 524 U.S. at 787). Even if the Court were to accept the EEOC's contention that this statement reveals Mr. Valenzuela's knowledge of Mr. Rickman's religion, it would only support a finding that Mr. Valenzuela knew of Mr. Rickman's beliefs as of April of 2004. Therefore, the EEOC has not shown that any incidents prior to this statement (e.g., Mr. Rickman being asked to mop coffee stains or his being chastised for turning his back on Mr. Valenzuela) were premised on Mr. Rickman's religion. *See generally* 42 U.S.C. § 2000e-2(a) (discrimination must be "because of" an individual's religion).

18 With respect to conduct after April of 2004, the EEOC alleges that Mr. Rickman's office was moved four times. But the agency ties only the last two moves to Mr. Rickman's religion. *See* Dkt. #38 at 4 (the cryptic "The Emperor is Dead. Long live the King!" statement was made in the course of the third move, while the fourth move was made immediately after Mr. Rickman observed a Pagan holiday).[2] The EEOC cites to *Chuang v. University of California Davis, Board of Trustees*, 225 F.3d 1115, 1125 (9th Cir. 2000), for the general proposition that forcible relocation is an adverse employment action. Dkt. #38. The Court does not read *Chuang* so broadly. The *Chuang* court specifically noted that the

---

[2] The EEOC also alleges that Mr. Rickman's religious artifacts were missing from his desk. Dkt. #38. But there is no evidence that Mr. Valenzuela, as opposed to any other employee or individual, absconded with them.

- 6 -

1  "forcible relocation of the [plaintiffs'] laboratory disrupted important, ongoing research
2  projects" and that the new office space was "totally inadequate" for the plaintiff's research
3  responsibilities. 225 F.3d at 1125-26. No similar showing has been made here.

4      The EEOC further contends that Mr. Valenzuela arbitrarily changed Mr. Rickman's
5  work-related priorities (Dkt. #39 ¶44), but it has presented no evidence that discrimination
6  played any role in these decisions. The EEOC has also failed to provide details of the
7  changes such that the Court can meaningfully assess whether they unreasonably interfered
8  with Mr. Rickman's work performance. *See id.*, Ex. A ¶42.

9      The agency alleges that Mr. Valenzuela considered Mr. Rickman a "no show" for a
10 single workday and locked Mr. Rickman's office on a single workday. But "isolated
11 incidents (unless extremely serious) will not amount to discriminatory changes in the terms
12 and conditions of employment." *Nichols*, 256 F.3d at 872 (quotations omitted).

13     In sum, the Court concludes that the evidence of Mr. Valenzuela's hostile actions in
14 this case, including two office moves, an unspecified change in priorities, considering Mr.
15 Rickman a "no show" for one day, and locking his office on one day, would not support a
16 jury finding of the severe or pervasive actions needed to establish a hostile work environment
17 claim.

18     **C.   Retaliation.**

19     The EEOC alleges that Mr. Rickman was retaliated against in violation of Title VII.
20 Dkt. #1. A plaintiff makes a prima facie case of unlawful retaliation by producing evidence
21 that he engaged in activity protected by Title VII, that the employer subjected him to a
22 materially adverse action, and that there was a causal link between the protected activity and
23 the adverse action. *See Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185,
24 1196-97 (9th Cir. 2003). Mr. Rickman claims that ValWest retaliated against him by locking
25 his office door, denying him the keys to his office, being belittled, being told his productivity
26 had declined, and being discharged. Dkt. #37-2 at 33. Of these actions, Mr. Rickman's
27 termination represents the clearest example of actionable retaliation.

28     The Ninth Circuit has made clear that filing a charge of discrimination with the EEOC

1  is a protected activity, *see, e.g., Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir.
2  1986), and that termination is a materially adverse action, *see, e.g., Brooks v. City of San
3  Mateo,* 229 F.3d 917, 1093 (9th Cir. 2000).  Causation may be inferred from the temporal
4  proximity between a protected activity and an adverse employment action.  *See Ray v.
5  Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) ("That an employer's actions were caused
6  by an employee's engagement in protected activities may be inferred from proximity in time
7  between the protected action and the allegedly retaliatory employment decision.") (internal
8  quotes and citation omitted); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74
9  (2001).

10  Mr. Rickman filed a charge of discrimination on May 6, 2004, and was terminated on
11  May 21, 2004.  This 15-day span is sufficient evidence of causation.  *See Yartzoff v. Thomas*,
12  809 F.2d 1371, 1376 (9th Cir.1987) (three month gap sufficient); *Miller*, 797 F.2d 727 at
13  731-32 (two month gap sufficient); *see also Prowell v. Kennedy Rest. & Bar Mgmt., Inc.*,
14  CV-04-1559, 2006 WL 1182027, at *3 (D. Ariz. May 3, 2006) (three week gap sufficient).

15  If the plaintiff makes a prima facie case, the burden of production shifts to the
16  defendant to present a legitimate, non-retaliatory reason for the adverse employment action.
17  *See Brooks*, 229 F.3d at 928.  Defendant states that Mr. Rickman was terminated for failing
18  to call in for three consecutive days as required by the company's attendance policies and for
19  failing to submit a doctor's release as requested by Mr. Valenzuela.  *See* Dkt. #36.

20  If the defendant carries its burden of production, the plaintiff "must demonstrate a
21  genuine issue of material fact as to whether the reason advanced by the [defendant] was a
22  pretext."  *See Brooks*, 229 F.3d at 928.  The plaintiff may do so by presenting either direct
23  evidence or specific and substantial circumstantial evidence that the defendant's reason was
24  a pretext to retaliate against him.  *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,
25  1062 (9th Cir. 2002).

26  In his declaration, Mr. Rickman notes that, after he filed his initial EEOC charge, Mr.
27  Valenzuela said "the charges you filed against me are serious," the allegations are "only
28  going to cause [Mr. Rickman] trouble," and "who's going to believe you over me anyway?"

Dkt. #39, Ex. A ¶¶56, 58.  These statements are direct evidence of an intent to retaliate against Mr. Rickman and create a triable issue of fact on the veracity of Defendant's non-discriminatory reasons for terminating him.  *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) ("When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial.").

### III. Motion to Strike.

Plaintiff has moved to strike Defendant's "Reply Statement of Facts and Exhibits in Support of Summary Judgment" (Dkt. #46).  Dkt. #47.  This Court has previously noted that such "supplemental filings are not contemplated by the local rules." *E.E.O.C. v. Boeing Co.*, 05-03034, 2007 WL 2343860, at *12 (D. Ariz. Aug. 15, 2007).  Defendant has cited no legal authority suggesting that this general rule should be disturbed, nor has Defendant sought leave of Court for this filing.  The motion will be granted.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #36) is **granted in part and denied in part**.  It is granted with respect to the EEOC's hostile work environment claim and denied with respect to the retaliation claim.
2. The EEOC's motion to strike (Dkt. #47) is **granted**.
3. A pre-trial conference will be scheduled by separate order.

DATED this 20th day of May, 2008.

_____
David G. Campbell
United States District Judge

- 9 -